JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order Re: Defendants OpenGate Capital, LLC and Open Publishing, LLC's Motion to Dismiss Pursuant to FRCP 12(b), or in the Alternative, Motion to Dismiss for Forum Non Conveniens and Motion to Compel Arbitration [DE 27]

## I. INTRODUCTION

Plaintiffs are Finsa Portafolios, S.A. de C.V. and FINSA CKD M Fideicomiso CIB/2017 (collectively, "FINSA" or "Plaintiffs"). FINSA brought several fraud and breach of contract claims against OpenGate Capital, LLC and six of its subsidiaries in connection with the sale of a manufacturing facility in Mexico. Defendants OpenGate Capital, LLC and OpenGate Publishing, LLC (collectively, "the Open Gate entities" or "Defendants") filed the Motion to Dismiss that is presently before the Court.

For the following reasons, the Court **GRANTS** Defendants' motion to dismiss and compel arbitration.

## II. FACTUAL BACKGROUND

The following is a summary of the allegations in Plaintiffs' Complaint.

Finsa Portafolios, S.A. de C.V. is a Mexican corporation with its principal place of business in Mexico. FINSA CKD M Fideicomiso CIB/2017 is a Mexican trust with its principal place of residence in Mexico.

Defendant OpenGate Capital, LLC ("OpenGate") is a private equity firm incorporated in California and with its principal place of business located in Los Angeles, California. Six OpenGate subsidiaries are named as co-Defendants in this action: Open Publishing, LLC; RoundRock 092012 LLC, RoundRock Scientific International, LLC, and RoundRock Mexico, LLC (collectively, "the RoundRock entities"); Hamilton Scientific, LLC ("Hamilton Scientific"); and Hamilton Laboratory Solutions, LLC. All six subsidiaries are organized under Delaware law. Five have their principle place

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

of business in Los Angeles, California. The sixth has its principal place of business in Manitowoc, Wisconsin. The RoundRock entities and Hamilton Scientific are currently involved in bankruptcy proceedings in the District of Delaware.

A seventh subsidiary organized under Mexico law, Fisher Hamilton, S. de R.L. de C.V. ("Fisher Hamilton"), was a party to the contract at issue but is not a party to the present action. Fisher Hamilton is a subsidiary of RoundRock Scientific and RoundRock Mexico, which are in turn subsidiaries of RoundRock 092012, which is a subsidiary of Open Publishing, LLC, which is a subsidiary of the ultimate parent company OpenGate.

In October 2012, the OpenGate and RoundRock entities purchased a laboratory furniture manufacturing business from Thermo Fisher Scientific, Inc. The business, which the OpenGate and RoundRock entities renamed Hamilton Scientific, operated at two American facilities and one facility in Reynosa, Mexico ("the Reynosa Facility," held by Fisher Hamilton). In making the sale, Thermo Fisher did not disclose that the Reynosa Facility was overrun by a drug cartel, or that the drug cartel activity severely diminished the Reynosa Facility's value. OpenGate filed several fraud claims against Thermo Fisher in United States District Court, which they eventually stipulated to dismiss with prejudice.

In December 2014, while their lawsuit against Thermo Fisher was pending, the OpenGate and RoundRock entities negotiated a sale-leaseback agreement for the Reynosa Facility. As alleged, FINSA agreed to purchase the Reynosa Facility from OpenGate, via Fisher Hamilton, for $15 Million and the promise to lease back the Reynosa Facility to OpenGate, via Fisher Hamilton.[1] OpenGate named Hamilton Scientific as guarantor of the lease. The OpenGate entities communicated with FINSA throughout the negotiations, and disclosed to FINSA that OpenGate was the ultimate parent company of Fisher Hamilton.

Jack Roberts ("Roberts"), an OpenGate employee who was also appointed President and CEO of Hamilton Scientific, signed a Letter of Intent on behalf of RoundRock Scientific International, LLC and RoundRock 092012, LLC. The final contract involved three agreements: the Purchase Agreement, the Lease Agreement, and the Guaranty Agreement (collectively, "the Agreements"). The official parties to the Purchase and Lease Agreements were OpenGate's Mexican subsidiary Fisher Hamilton and FINSA. The official parties to the Guaranty Agreement were Hamilton Scientific and FINSA. Roberts signed the agreements as attorney for both Fisher Hamilton and Hamilton Scientific.

---

[1] The Court notes, however, that neither the Purchase nor Lease Agreements state that Fisher Hamilton was selling or leasing the Reynosa Facility on behalf of OpenGate.

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

    The Purchase Agreement contains a forum selection clause providing that any dispute regarding its "interpretation and fulfillment" is subject to the jurisdiction of Reynosa, Mexico.[2] The Lease Agreement also contains a forum selection clause providing that any dispute regarding its "interpretation, performance and enforcement" is subject to the jurisdiction of Reynosa, Mexico. The Lease Agreement also contains a choice of law clause providing that the Lease Agreement will be "construed and interpreted pursuant to the laws of Tamaulipas, Mexico." The Guaranty Agreement contains an arbitration clause providing that "[a]ny controversy or claim arising out of or relating to this Guaranty, or the breach thereof, shall be exclusively determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules," and that the arbitration would take place in Mexico.

    During negotiations, OpenGate Vice President Virginia Thornton provided FINSA with growth projections for Hamilton Scientific through 2016. Roberts also provided FINSA with Hamilton Scientific's and the Reynosa Facility's growth strategies. Roberts used both his Hamilton Scientific and OpenGate email addresses when communicating with FINSA.

    Both the Letter of Intent and the final Purchase Agreement provided that the Reynosa Facility was free from any undisclosed litigation, and that all representations and warranties were true. Yet despite its pending suit against Thermo Fisher, those documents affirmatively represented that the signing parties were unaware of litigation involving the Reynosa Facility. The OpenGate entities did not disclose that the value of the Reynosa Facility was diminished by the drug cartel's presence. In addition, the projections that OpenGate provided to FINSA through Thornton and Roberts fraudulently concealed that Hamilton Scientific was on the verge of failure.

    Fisher Hamilton never made a single rent payment. In March 2015, OpenGate closed the guarantor Hamilton Scientific. OpenGate caused Hamilton Scientific to close, including by failing to adequately capitalize Hamilton Scientific. In addition, rather than use the $15 million it received from the contract with FINSA to pay back Hamilton Scientific's creditors, OpenGate used the money to: (1) pay a $1.5 million loan for an OpenGate affiliate; (2) prepay another $1 million loan from another OpenGate affiliate; (3) pay OpenGate a discretionary $1.1 million in management fees; and (4) pay OpenGate's attorneys' fees in the Thermo Fisher Action. OpenGate then sold Hamilton Scientific to Hamilton Laboratory Solutions, which reincorporated as Hamilton Laboratory Solutions, LLC and continued running the same business. OpenGate did not disclose the sale to FINSA.

---

[2] This and other readings of the Purchase Agreement are based on a translation of the Purchase Agreement, which was provided to the Court in its original Spanish.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

FINSA then brought the following claims: (1) Fraudulent Representations based on false representations in the Letter of Intent and the Agreements; (2) Fraudulent Concealment for failure to disclose the pending suit against Thermo Fisher, Fisher Hamilton and Hamilton Scientific's financial conditions, and OpenGate's intent to close and sell Hamilton Scientific; (3) Promissory Fraud for failure to perform as promised under the Lease and Guaranty Agreements; (4) Constructive Fraud; (5) Breach of Contract for failure to make payments due under the Lease Agreement; and (6) Breach of Contract for failure to make any payments due under the Guaranty Agreement. Claims 1–4 are referred to collectively as "the fraud claims." Claims 5–6 are referred to collectively as "the breach of contract claims."

### III. JUDICIAL STANDARD

#### A. Rule 12(b)(3) and Forum Non Conveniens

A motion to dismiss based on a forum selection clause is treated as a motion to dismiss for improper venue under Federal Rule of Civil Procedure ("Rule")12(b)(3). *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Under this standard, the Court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the nonmoving party." *Petersen v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013) (quotation omitted). The Court need not accept the pleadings as true and may consider facts outside the pleadings. *Id.*

#### B. Rule 12(b)(6)

A complaint can be dismissed under Rule 12(b)(6) if it fails to satisfy the pleading requirements of Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable. *Id.* A plaintiff need not provide detailed factual allegations but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. When ruling on a Rule 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

#### C. Rule 9(b)

When a plaintiff alleges a claim for fraud, the complaint must meet the heightened pleading requirements of Rule 9(b) to survive a motion to dismiss. *See Vess. v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In the Ninth Circuit, Rule 9(b) requires that allegations of fraud "state the

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

time, place, and specific contents of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "Rule 9(b) requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.*

### D. Rule 12(b)(7)

Rule 19(a) states that a person must be joined in a lawsuit if feasible, if (1) "in that person's absence the court cannot grant complete relief amongst the existing parties"; or (2) there will be prejudice to a non-joined person's interest or an existing party's interests. Rule 19(b) states that, where a non-party satisfies either of the two criteria in Rule 19(a) but cannot be feasibly joined, the court must determine whether the action should proceed. Under Rule 12(b)(7), a defendant may bring a motion to dismiss claims for relief for the failure to join a party under Rule 19. The burden of proof for a Rule 12(b)(7) motion is on the party moving to dismiss for failure to join an indispensable party. *See Biagro Western Sales, Inc. v. Helena Chem. Co.*, 160 F.Supp.2d 1136, 1141 (E.D. Cal. 2001) (citing *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). To determine whether Rule 19 requires joinder of additional parties, the court may consider evidence outside of the pleadings. *See Mcshan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

### IV. DISCUSSION

Defendants raise several arguments in favor of dismissing Plaintiffs' claims against them. First, Defendants argue the claims must be dismissed for *forum non conveniens* because each claim falls within the Agreements' forum selection and arbitration clauses. Second, the Defendants argue the Court lacks diversity jurisdiction because Fisher Hamilton's corporate citizenship must be attributed to the OpenGate entities. Third, Defendants argue the claims must be dismissed for failure to satisfy the Rule 9(b) pleading requirements in their alter ego fraud claims. Finally, Defendants argue the claims must be dismissed for failure to join indispensable parties. The Court begins by addressing Defendants' *forum non conveniens* argument.

### E. Forum Non Conveniens

Defendants argue that the Court should dismiss the lawsuit for *forum non conveniens* based on the forum selection clauses in the Purchase and Lease Agreements and the arbitration clause in the Guaranty Agreement. Plaintiffs counter that the forum selection and arbitration clauses are unenforceable because they were an instrumentality of OpenGate's fraudulent scheme, would deprive FINSA of its day in court, and violate California public policy. In addition, Plaintiffs argue the clauses do not apply to the fraud claims because they are not rooted in contract interpretation. Even if the clauses were enforceable, Plaintiffs argue the public interest factors require a California forum.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

1. *Arbitration Clause*

Generally, in deciding whether to compel arbitration, a court must determine two gateway issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). "There is 'generally a liberal federal policy favoring arbitration agreements.' In accordance with that policy, 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). There is a presumption that courts will decide which issues are arbitrable. *Id.* However, arbitrability can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Defendants argue that because the arbitration clause incorporates the American Arbitration Association's ("AAA") International Arbitration Rules, the arbitrator must decide any disputes relating to the validity or scope of the arbitration clause.

The Ninth Circuit has observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (quoting *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). Plaintiffs rely on *Meadows v. Dickey's Barbecue Restaurants Inc.* to challenge this argument, but they overstate the court's holding. The court confirmed that it is reasonable to conclude that the incorporation of the AAA rules into an agreement shows clear and unmistakable intent to delegate if the parties to the contract are sophisticated parties such as large corporations—but held the rule did not extend to unsophisticated parties. *Meadows v. Kickey's Barbcue Restaruants Inc.*, 144 F. Supp. 3d 1069, 1077 (N.D. Cal. 2015). Plaintiffs and Defendants are sophisticated corporations who chose to include an arbitration clause that incorporated AAA language in a commercial contract. Thus, an arbitrator should decide disputes relating to the validity and scope of the arbitration clause and the court's analysis into the issue must stop here. Accordingly, the Court **GRANTS** Defendants' Motion to Compel Arbitration of all claims relating to the Guaranty Agreement.

2. *Forum Selection Clause*

Federal law applies to interpret a forum selection clause. *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir. 1988). Arbitration clauses and forum selection clauses are subject to the same analysis. *Id.* at 514 n.4. In general, the Court will consider both private and public interests when evaluating a *forum non conveniens* motion. *Alt. Marine Constr. Co. v. United States Dist. Court*, 134 S.Ct. 548, 581 (2013). When the parties' contract contains a valid forum selection clause,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al  v. OpenGate Capital, LLC et al* | | |

however, only public interests are considered. *Id.* at 581–82. Accordingly, the Court must first decide the validity of the forum selection clauses and then look to public interest factors.

    a.  *Validity*

Forum selection clauses are considered prima facie valid. *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589 (1991); *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972). The party claiming the clause is invalid or unenforceable due to unfairness bears a heavy burden of proof. *Carnival Cruise Lines*, 499 U.S. at 592. There are three reasons a forum selection clause may be unenforceable: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court,"; and (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Bremen*, 407 U.S. at 12–13; *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996). Plaintiffs argue that all three factors render the clauses unenforceable.

First, Plaintiffs argue the clauses are unenforceable because they were an instrumentality of OpenGate's fraudulent scheme. But Plaintiffs do not argue that the inclusion of the forum selection clauses themselves were the product of fraud. To the contrary, Defendants point out that the Plaintiffs drafted the Agreements to include the clauses, and Plaintiffs' opposition does not dispute this point. The Supreme Court clarified that the fraud exception "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998); *TAP Holdings LLC v. PNC Bank*, No. CV 08-6310 PA (JTLX), 2008 WL 11339605, at *3 (C.D. Cal. Nov. 24, 2008).

Plaintiffs mischaracterize the cases they cite in support of their argument that the clauses are voided by fraud. In *Farmland Industries*, the Eighth Circuit did indeed find the forum selection clause at issue was voided by fraud, but only in the specific situation in which "a fiduciary relationship . . . is created by a contract tainted by fraud." *Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851 (1986) (addressing a contract between a commodities broker and its customer). No fiduciary relationship was created by the contract in this case. The passage Plaintiffs cite related to the separate conclusion that the litigation fell outside the scope of the forum selection clause. *Id.* at 852. The plaintiffs in *Farmland Industries* entered into the contract containing the forum selection clause to open two commodities trading accounts with the defendant Heinold. *Id.* at 849. The plaintiffs alleged that before the contract was formed, one of its employees entered into a scheme with two employees from another company and one of their relatives, whereby the plaintiff's employee would receive a kickback for every closed contract on the plaintiff's commodities account. *Id.* The plaintiffs further alleged that a

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

sham corporation was opened to receive the kickbacks. *Id.* Thus, the fraudulent scheme involved individuals, entities, and matters unrelated to the contract or its forum selection clause.

In *Washburn*, the Seventh Circuit similarly refused to enforce an arbitration clause not because it was voided by fraud but because the litigation was outside the scope of the clause. *Washburn v. Societe Commerciale de Reassurance*, 831 F.2d 149, 152 (7th Cir. 1987). The contract containing the arbitration clause was just one of many contracts that were allegedly used to fraudulently conceal an insurance company's insolvency in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* at 150. There was no allegation that the parties failed to perform as promised under the contract. *Id.* Thus, the court held resolution of plaintiff's RICO claim was unrelated to the contract. *Id.* at 152. Neither of these cases save Plaintiffs from the need to show the clauses themselves were the product of fraud, and Plaintiffs have not made such a showing. Thus, the clauses are not invalidated on this ground.[3]

Second, Plaintiffs argue that enforcement of the clauses would deprive FINSA of its day in court because the lessee and guarantor are in bankruptcy after OpenGate stripped them of their assets, and OpenGate is not subject to service of process in Mexico. Defendants counter that while Plaintiffs may believe litigating in Mexico is inconvenient, nothing prevents them from filing suit or commencing arbitration in Mexico. Courts have held that an adequate alternative forum does not exist if the defendant is not amenable to service of process in the foreign forum or if the remedy provided by the alternative forum is "so clearly inadequate or unsatisfactory[] that it is no remedy at all." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (citing *Piper Aircraft*, 454 U.S. 235, 255 n.22 (1981). However, that the law or the remedy afforded is less favorable in the foreign forum is not determinative. *Id.*

The Ninth Circuit has upheld forum selection clauses requiring cases to be litigated in Mexico where the defendant submitted to service of process. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664, 666 (9th Cir. 2009); *Gutierrez v. Advanced Medical Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011); *Moreno v. Omnilife USA, Inc.*, 483 F.3d Fed. Appx. 340, 342 (9th Cir. 2012). Although Plaintiffs argue the OpenGate entities are not subject to service of process in Mexico, Plaintiffs provide no evidence or law to support their argument. Regardless, Plaintiffs do not dispute the fact that Plaintiffs could file suit against Fisher Hamilton or Hamilton Scientific once the bankruptcy stay is lifted. Thus, the clauses are not invalidated on this ground.

---

[3] Moreover, the scope analysis in both cases is distinguishable. In both *Farmland Industries* and *Washburn*, the contracts were a side show to a separate and much broader fraudulent scheme. As discussed in more detail below, the contracts here are the main event. Each fraud claim is based on statements or omissions made in the contracts themselves or while negotiating those contracts.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

Third, Plaintiffs argue dismissal would be contrary to California's public policy of providing those harmed by California corporations with a California forum for relief. California courts have repeatedly recognized the state's "interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232–33 (9th Cir. 2011) (quoting *Stangvik v. Shiley Inc.*, 54 Cal.3d 744, 756 n.10 (1991)). Defendants first respond that Mexico has a significant interest in the dispute because it concerns Mexican entities and property. When weighing similar competing policy concerns, the Ninth Circuit found the interests effectively canceled each other out. *Carijano*, 643 F.3d at 1232 (weighing "Peru's stake in a case involving its own 'lands and citizens' against 'California's interest in ensuring that businesses incorporated . . . within its borders abide by the law'" and determining "the local interest factor favors neither side entirely"). Moreover, California's interest in deterring its corporations from wrongful conduct would still be furthered if OpenGate or its subsidiaries were held liable in proceedings in Mexico. *Cf. Flake v. Medline Indus.*, 882 F. Supp. 947, 950 (E.D. Cal. 1995) (noting that California's "strong public policy interest in protecting its residents from discrimination . . . will not be contravened as long as [Plaintiff] has some legitimate remedy for his age discrimination claim.").

Defendants also argue that public policy favors enforcement of forum selection and arbitration clauses. Indeed, federal law favors enforcement of these clauses. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). California courts also routinely enforce forum selection clauses so long as they are not unfair or unreasonable. *Cassell v. Survival Systems USA, Inc.*, 2008 WL 11335732, *2 (S.D. Cal. July 17, 2008) (citing *Olnick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1294 (2006)). Thus, enforcement of the forum selection clauses would not contravene public policy.

The Court accordingly finds no grounds on which to invalidate the clauses at issue.

    b. *Scope*

In the alternative, Plaintiffs argue their tort claims fall outside the scope of the forum selection clauses.

The OpenGate entities did not sign the Agreements containing the forum selection clauses. In the Ninth Circuit, however, forum selection clauses apply to non-signatories if "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Defendants argue the facts of this case parallel those in *Randhawa*, a case that enforced the forum selection clause against a non-signatory because the plaintiff alleged a close relationship among the defendants, sought to impute the signing party's torts and contract violations to the non-signatory, and the non-signatory's "alleged misrepresentations were intimately tied to the eventual contract that

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

plaintiff signed." *Randhawa v. Skylux Inc.*, No. CIV 09-2304 WBS DAD, 2009 WL 5183953, at *11 (E.D.Cal. Dec. 21, 2009). The Court agrees, and finds the forum selection clauses apply to Defendants.

The Court also finds that the forum selection clauses apply to Plaintiffs' tort claims. "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.1988). The Ninth Circuit in *Manetti-Farrow* found plaintiff's claims for tortious interference with prospective economic advantage and tortious interference with contractual relations required analyzing whether the parties were in compliance with the contract and were therefore within the scope of the forum selection clause. *Id.* at 514.

Plaintiffs rely on the state case *Bancomer* to argue the tort analysis is independent from any contract analysis. In *Bancomer*, the California Court of Appeals held the forum selection clause did not apply to plaintiff's fraudulent inducement claim because "the alleged offending conduct preceded formation of the purchase agreement" and "fraudulent inducement claims do not necessitate consideration of the parties' compliance with the purchase agreement." *Bancomer, S.A. v. Super. Ct.*, 44 Cal. App. 4th 1450, 1461 (1996). Plaintiffs argue that the fraudulent conduct in this case likewise preceded the formation of the Purchase and Lease Agreements.

Federal case law, however, supports finding the tort claims here relate to the contract. For example, in *Modius* the district court found that intentional misrepresentation, fraudulent inducement, and negligent misrepresentation claims required examination of the contract for evidence of what the parties intended their rights and duties to be. *Modius, Inc. v. Psinaptic, Inc.*, No. C 06-02074 SI, 2006 WL 1156390, at *7 (N.D. Cal. May 2, 2006). In addition, the district court in *Mosier* applied a forum selection to tort claims because, although their resolution did not hinge upon competing interpretations of contract terms, the acts that the defendant performed under the contract formed the primary basis for the tort claims. *Mosier* v. *HSBC Bank USA, N.A.*, No. CV 10-3669, 2010 WL 5422550, at *3 (C.D. Cal. Dec. 28, 2010). Here, each of Plaintiffs' fraud claims either relate directly to provisions within the Agreements or involve misrepresentations or omissions made while negotiating those agreements. Thus, the fraud claims relate to the contract and are within the scope of the forum selection clauses.

    c. *Public Interest Factors*

Finally, Defendants and Plaintiffs dispute whether the public interest factors weigh in favor or against dismissal. The public interest factors related to the interests of the forums include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Carijano*, 643 F.3d at 1232 (internal quotation and citation omitted).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-CV-04360-RGK-E | Date | September 26, 2017 |
|---|---|---|---|
| Title | *Finsa Portafolios, S.A. de C.V. et al v. OpenGate Capital, LLC et al* | | |

As discussed above, the local interest factor favors neither side entirely because both forums have an interest in the litigation. *See Carijano*, 643 F.3d at 1232. Plaintiffs also argue that judicial considerations favor a California forum because California law will apply to the fraud claims, and all but one defendant and almost all of the evidence and witnesses are located in Los Angeles. Defendants argue that judicial considerations favor dismissal because Mexico forum selection and arbitration clauses apply and the Agreements contain a Mexico choice of law clause. Defendants cite federal law holding that choice of law clauses encompass both contract and tort claims, so long as they arise from or are related to a contract. *See G.P.P. Inc. v. Guardian Prot. Prod., Inc.*, No. 1:15-CV-00321, 2015 WL 3992878, at *14 (E.D. Cal. June 30, 2015). Plaintiffs' breach of contract claims would surely fall within this clause. As discussed above, the tort claims at issue in this case are related to the Agreements and would therefore fall within the Mexico choice of law clause. Judicial economy thus favors having the action decided in Mexico. Furthermore, although most of the defendants are located in Los Angeles, the fraud and contract claims involve a facility located in Mexico, owned by a Mexican subsidiary, and sold to two Mexican entities. Given the balance of the interests present in both forums, the citizens of California should not be forced to bear the burden of this dispute.

The Court therefore dismisses Plaintiffs' Complaint for *forum non conveniens*. As such, the Court will not address Defendants' additional arguments regarding diversity jurisdiction, pleading requirements, and failure to join indispensable parties.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration of claims relating to the Guaranty Agreement and Defendants' Motion to Dismiss for *forum non conveniens* are **GRANTED**.

**IT IS SO ORDERED.**

_____   :   _____

Initials of Preparer

_____