UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:17-cv-04360-SB-E | Date: | July 16, 2021 |
|---|---|---|---|

| Title: | *Finsa Portafolios, S.A. de C.V., et al. v. OpenGate Capital, LLC, et al.* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **ORDER RE: CHOICE OF LAW**

In advance of trial, Plaintiffs Finsa Portafolios, S.A. de C.V. and FINSA CKD M Fideicomiso CIB/2017 and Defendants OpenGate Capital, LLC and Open Publishing, LLC submitted their pretrial filings. In those filings, the parties made it clear that each was operating under the theory that a different body of law applied to this case. Plaintiffs contend that California law applies, while Defendants argue that Mexico law applies. Under Rule 44.1, the Court is obligated to assess the proper choice of law and concludes that Mexico law—specifically, the Civil Code of the state of Tamaulipas (CCT)—governs this case.

## **PROCEDURAL HISTORY**

The choice of law has been raised at different times and in different ways throughout the case.

A.  **The Pleadings**

Early on, Defendants moved to dismiss the case on the grounds that the forum-selection clause in agreements between Plaintiffs and two of Defendants' subsidiaries required the adjudication of the dispute in Mexico. At that time, those subsidiaries were still parties in this litigation. The Honorable R. Gary Klausner, the previously assigned judge, found the forum-selection clause controlling on the question of *forum non conveniens* and dismissed the case. Dkt. No. 40. Plaintiffs sought reconsideration of the dismissal order and requested leave to amend their pleading. Judge Klausner denied both motions. Dkt. No. 59. Plaintiffs appealed. Dkt. No. 62.

The Ninth Circuit affirmed Judge Klausner's rulings but advised "the district court to fully consider [] a motion [to reopen the case] should [Plaintiffs] fail to obtain an appropriate forum over [Defendants] and its subsidiaries in Mexico." Dkt. No. 66 at 5. Plaintiffs thereafter commenced litigation in Mexico. The record does not clearly reflect the course of the Mexico proceedings. However, when Plaintiffs filed a third motion to reopen the case (their second motion was denied, Dkt. No. 75), Judge Klausner granted it. Dkt. No. 83. In the order reopening the case, Judge Klausner found that Defendants had been given the opportunity to consent to jurisdiction in Mexico, but that they had improperly conditioned their consent on Plaintiffs making changes to their pleading. See *id.* at 4 ("Consent to jurisdiction under such conditions is effectively no consent at all").

The first amended complaint (FAC) removed Defendants' subsidiaries as parties. Dkt. No. 85. When Defendants moved the Court to reconsider its decision to reopen the case or, in the alternative, to dismiss the case, Judge Klausner denied their requests. He found that when Defendants refused to consent to jurisdiction in Mexico, it effectively rendered Mexico an inadequate forum. Dkt. No. 97 at 6. Judge Klausner's order did not address the appropriate choice of law. However, in ruling on Defendants' motions, the Court applied California substantive and procedural law.

Defendants filed their answer to the FAC on September 2, 2020. Dkt. No. 102. In that answer, they raised an affirmative defense of "Improper Choice of Law." Specifically, Defendants argued that "Plaintiffs' FAC, and each purported cause of action alleged therein, is barred to the extent it is brought under California law because, pursuant to the choice of law provisions in the Purchase, Lease, and Guaranty Agreements, this dispute is controlled by Mexican law." *Id.* at 9. Defendants did not move the Court to address this issue or raise any other grounds

for their choice-of-law dispute.  *See* Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").  Instead, they waited until the summary judgment stage to raise choice-of-law questions.

### B. Summary Judgment

In March 2021, Defendants filed two motions concurrently—a motion for leave to file an amended answer to add a statute of limitations defense under Mexico law and a motion for summary judgment.  Dkt. Nos. 164 and 167.

In their motion to amend their answer, Defendants argued that Plaintiffs' claims would be barred by any one of four different statutes of limitations under Mexico law:  Article 1510 of the CCT; Article 1161 of the Mexico Federal Civil Code; Article 1161 of the Civil Code of Mexico City; or Article 1934 of the Mexico Federal Civil Code.  Dkt. No. 164 at 8.  Though moving to amend, Defendants claimed that they did not need to do so to raise this defense on summary judgment under Ninth Circuit law.  *See id.* at 10, n.3 (citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (holding that, absent prejudice, the "failure to raise the defense of the statute of limitations in [an] initial pleading does not preclude [the defendant] from making a motion for summary judgment based on that defense")).

In moving for summary judgment, Defendants relied heavily on their newly raised affirmative defense under Mexico law.  They claimed that Judge Klausner had already decided the choice-of-law issue and that his decision was the "law of the case."  Dkt. No. 167 at 15-16.  Defendants further argued that Judge Klausner's ruling was "consistent with California choice of law principles [set forth in] *Nedlloyd Lines B.V. v. Superior Court*," a case addressing how courts should examine choice-of-law clauses in agreements between "two sophisticated, commercial entities." *Id.* at 16.  Defendants did not mention the governmental interests test or contend that it would apply in the event that the Court disagreed with their reliance on the choice-of-law provision in the agreements.  That test was discussed for the first time, albeit briefly, in Defendants' reply.  *See* Dkt. No. 235 at 1-2, 11 (arguing that "even under the governmental interests test (which applies where no choice of law clause exists), Mexico law applies because California has no interest in this dispute").

The Court granted partial summary judgment for Defendants under California law.  In its order, the Court concluded that "the law of the case doctrine

does not require the application of Mexico law" because "Judge Klausner declined to enforce the forum-selection clause in the Agreements." Dkt. No. 254 at 5. The Court further found that, under the *Nedlloyd* test, "California choice-of-law principles do not favor applying Mexico law to this case in view of the changed circumstances." *See id.* at 6, n.4 (noting the paucity of argument on this point in Defendants' summary judgment papers). The Court did not address the governmental interests test, as that issue had not been properly raised on summary judgment. *See U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

### C.     The Pretrial Conference

Following the Court's summary judgment order, the parties submitted their pretrial filings. There, Defendants contended that Mexico law should govern the dispute, developing their substantive argument under the governmental interests test. Dkt. No. 300 at 2-5. Plaintiffs, on the other hand, argued that the Court already had decided that California law applied to all issues in this case based on its summary judgment ruling. Dkt. No. 296 at 18. Because of the fundamental nature of this dispute, the Court continued the trial date to allow time for the issue to be more thoroughly addressed.

As a threshold matter, Plaintiffs argue that Defendants waived their ability to argue that Mexico law applies by raising the issue at such a late stage of the case. The Court agrees with Plaintiffs that Defendants have not presented the choice-of-law issues as clearly and timely as Rule 44.1 contemplates. Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."); *see G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018) (stating that "a party relying on foreign law has an obligation to raise the specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law"). In this Court's view, the real choice-of-law issues arise out of an application of the governmental interests test and not out of the agreements relied upon by Defendants. Yet Defendants did not invoke that test until their reply on summary judgment—on a record that was not properly developed and that did not fairly afford Plaintiffs an opportunity to respond.

Still, the Court is not persuaded that a finding of waiver would be proper in view of the current state of the law. Rule 44.1 appears to require reasonable notice but "does not attempt to set any definite limit on the party's time for giving the

notice of an issue of foreign law." Fed. R. Civ. P. 44.1, Advisory Committee Notes; see *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 848 (9th Cir. 2001) (noting "Rule 44.1's requirement of reasonable notice"). In *DP Aviation*, the Ninth Circuit concluded: "Absent extenuating circumstances, notice of issues of foreign law that reasonably would be expected to be part of the proceedings should be provided in the pretrial conference and contentions about applicability of foreign law should be incorporated in the pretrial order." *Id.* Applying the Ninth Circuit standard, it is difficult to find waiver here. The choice-of-law issue was raised in Defendants' answer and motion for summary judgment (though not as well as it should have been) and then addressed more fully in Defendants' memorandum of contentions of fact and law.

Moreover, while the choice-of-law issues should have been resolved earlier in the case, the Court has provided the parties a full opportunity to address them. On June 22, 2021, the Court ordered supplemental briefing and directed the parties to prepare their respective witnesses on Mexico law for an evidentiary hearing. Dkt. No. 358.[1] The hearing was held on June 29, 2021, with both witnesses appearing remotely. The Court and counsel had an opportunity to question the witnesses. Though there were numerous points of dispute about Mexico law, the parties and their witnesses agreed on a few key issues:

- Mexico law would not consider Defendants to be parties to the agreements between Plaintiffs and Defendants' subsidiaries because Defendants are not signatories to those agreements;

- The CCT would apply if the Court were to conclude that Mexico law governs this case;

- The statute of limitations for non-contractual civil liability claims is one year under the CCT; and

- Article 1397 would be the only appropriate statute under which Plaintiffs could bring suit under the CCT.

---

[1] The parties have a mutual obligation under Rule 44.1 to work cooperatively to assist the Court in deciding issues of foreign law. *G & G Prods. LLC*, 902 F.3d at 950 ("There is nothing 'cooperative' about simply invoking foreign law and expecting a court to decide every legal permutation, including ones that the parties failed to raise."). Because the parties did not appear to be cooperating, the Court directed the parties to address several issues, including ones not raised by the parties.

Following the hearing, the Court took the matter under submission.

## DISCUSSION

The question before the Court is whether California or Mexico law applies. Because Defendants were not signatories to the agreements,[2] and because they effectively waived their ability to selectively enforce the terms of those agreements when they failed to consent to the jurisdiction of the Mexico court, the Court decides this issue under California's governmental interests test. *See Wa. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 915 (2001) ("[W]hen there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law.").

### A. The Governmental Interests Test

"[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 581 (1974). The test is applied in three steps:

> First, the court must determine whether the foreign law differs from California law. Second, if there is a difference, the court must determine whether a "true conflict" exists by determining whether both states have a legitimate interest in applying their own law to the case at hand . . . Third, when both states have a legitimate interest in the application of their respective laws, the court analyzes the "comparative impairment" of the interests of the two states and applies the law of the state whose interest would be more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010) (citations omitted). The Court reaches the third step only if the laws are materially different and if each state has an interest in having its own law applied. If the foreign state has no

---

[2] The fact that Defendants are non-signatories provides an independent basis for rejecting their reliance on the choice-of-law clause in the agreements.

interest, there is only a "false conflict," and the law of the forum governs. *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989), *as amended on reh'g* (Apr. 28, 1989); *see id.* at 1424 ("The absence of an interest on California's part sufficient to sustain one side of a 'true conflict' does not settle entirely the conflicts question.  Unless [the foreign state] has a legitimate interest in the application of its law, California's weak, but pervasive, interest in applying its own law would still prevail").

Courts do not conduct this analysis for the case as a whole but rather examine each issue separately.  *See Wa. Mut. Bank, FA*, 24 Cal. 4th at 920 (stating that "a separate conflict of laws inquiry must be made with respect to each issue in the case").  This issue-by-issue approach can be strained and potentially unworkable in many cases—strained in that issues are often interdependent, and unworkable in that complex cases often raise myriad issues (whose interdependence is not always obvious).  Yet this approach generally appears to be required by California law.  *Id.*; *but see Hernandez v. Burger*, 102 Cal. App. 3d 795, 803-04 (Ct. App. 1980) (recognizing the artificial nature of attempting to separate out a state's interest in creating a cause of action and defining the scope of the available remedies for that cause of action).  Here, the Court addresses (1) Plaintiffs' substantive claims, (2) the available remedies, and (3) the applicable statute of limitations.

### B.     Plaintiffs' Substantive Claims

Plaintiffs' FAC contains two fraud claims under California common law: one claim for fraudulent concealment and one for fraudulent misrepresentation.  The parties agree that Mexico does not have common-law claims.  At the hearing on Mexico law, Plaintiffs' expert, Alfonso M. Lopez-Melih (Lopez), acknowledged that Plaintiffs' only viable claim under the CCT would be under Article 1397.  Defendants' witness, Jose Massas-Farell (Massas), agreed.[3]

---

[3] Massas also addressed the possibility of pursuing a claim under Article 1534 of the CCT to nullify a contract under the concept of *dolo*.  However, as the parties agree that they did not enter into a contract, there is nothing to nullify.

The substantive claims available to Plaintiffs are materially different under California law and the CCT. While the elements of the claims appear similar,[4] a Mexican tort claim can be barred by contributory negligence. Dkt. No. 360-13, Mexican Law and Personal Injury Cases at 401 ("contributory negligence operates as a total bar to any recovery"). This fault scheme differs from California law, which requires a plaintiff to establish that it reasonably and detrimentally relied on a misrepresentation but does not bar claims for contributory negligence. *See Am. Gen. Life & Acc. Ins. Co. v. Findley*, 2013 WL 1120662, at *9 (C.D. Cal. Mar. 15, 2013) ("A plaintiff's contributory negligence is no defense to an intentional tort like fraud"). The Court therefore finds that the laws of the two states are materially different.

Next, the Court examines each state's interest in having its own law applied. As the allegedly fraudulent statements were communicated to Plaintiffs in Mexico, Mexico has an interest in having its law apply. *See Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80, n.6 (1957). In *Zinn*, the court stated that "the place of the wrong" in a fraud case is the place to which the misrepresentation was communicated:

> Plaintiffs contend that some of the acts constituting the wrong took place in Michigan where they claim the law allows interest as a matter of right, and also in California. However, the wrong was the misrepresentations . . . . No matter where the intention to misrepresent was formed, nor the acts which were misrepresented took place, *no wrong was committed until the misrepresentations were communicated to plaintiffs* and this took place in Washington.

*Id.* (citing the Restatement, Conflict of Laws, which focuses on the location of "the last event necessary to make an actor liable for an alleged tort") (emphasis added).[5]

---

[4] At the June 29 hearing, both parties' witnesses agreed that the elements of an illicit act claim are (1) a duty, (2) a breach of that duty, (3) actual damage, and (4) a causal relationship between the breach and the damage sustained.

[5] Plaintiffs contend that the "last event" imposing fraud liability was the "decision (made in California) to put Hamilton Scientific and its other shell subsidiaries into bankruptcy in Delaware without first using the sale-leaseback proceeds to fund Hamilton's turnaround plan as promised." Dkt. No. 359 at 10. This contention misapplies the test applicable to fraud cases under California law. *Zinn* is clear that it is the place where the misrepresentation was received that constitutes the

In this case, the alleged fraud was communicated to Plaintiffs in Mexico. The alleged misrepresentations, moreover, were made to Mexican entities about a business transaction within Mexico's borders—i.e., the sale of property in Mexico. Mexico therefore has a strong interest in having its law apply. Indeed, "[i]t is nonsensical to suggest that Mexico has no interest in regulating conduct that affects contracts made in Mexico," particularly contracts affecting property in Mexico. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000). California's interest, on the other hand, is "attenuated." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012). Its interest is in "regulating those who do business within its state boundaries." *Id.*; *see also Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986) (concluding that California had "some interest in deterring the manufacture of defective goods in its state which might injure California citizens" but has "little interest in applying its law to compensate citizens of Ontario").

Turning now to the third step of the test, the Court finds that Mexico's interests would be more impaired if the Court were to decline to apply Mexico law. Though the place of the wrong is no longer considered to be the controlling factor, *Hurtado*, 11 Cal. 3d at 579, it is still a relevant consideration in the choice-of-law analysis, *Hernandez*, 102 Cal. App. 3d at 802. Indeed, California courts still generally consider the place of the wrong to have the "predominant" interest. *Id.*; *McCann*, 48 Cal. 4th at 97-98; *see Mazza*, 666 F.3d at 593 (citing *Zinn* and other California case law for the principle that the place where the allegedly false advertising occurred has the predominant interest). By contrast, California's interests in regulating a resident defendant would not be materially impaired if Mexico law were to apply. *See id.* at 594 (rejecting the argument that "applying California law to the claims of foreign residents concerning acts that took place in other states . . . is necessary to achieve [California's] interest"). Because California's interest is subordinate to Mexico's, the Court finds that Mexico law provides the scope of the available claims.

---

"last event," and not the place where the illicit intent was formed or later carried out.

### C. Plaintiffs' Available Remedies

The Court turns next to the question of available remedies. No party disputes that Mexico law is significantly different from California law on this point. A chief material difference is that Mexico law does not permit a plaintiff to recover punitive damages.[6]

California has "little interest" in applying its more liberal damages rule to benefit foreign plaintiffs to the detriment of California citizens. *Paulo*, 792 F.2d at 895-96; see *Vestal v. Shiley Inc.*, 1997 WL 910373, at *3 (C.D. Cal. Nov. 17, 1997) ("California has voiced little interest in applying its law to compensate nonresidents for alleged injuries sustained out-of-state."). Thus, its only interest in having its law apply would be the "weak, but pervasive" interest California has in applying its own law as the forum state. *McGhee*, 871 F.2d at 1424.

Citing the California Supreme Court's decision in *Hurtado*, Plaintiffs argue that there is no true conflict because Mexico has no interest in applying its limitation of damages to its own citizens when they seek redress in a foreign jurisdiction. Dkt. No. 359 at 9-11. *Hurtado* involved an automobile accident in California that resulted in the death of a Mexican resident whose widow and children sued for wrongful death. The choice of law in that case was significant because Mexico, unlike California, limited the amount of recoverable damages in wrongful death actions. The California Supreme Court concluded that Mexico "has no interest in applying its limitation of damages in wrongful death actions to nonresident defendants or in denying full recovery to its resident plaintiffs." 11 Cal. 3d at 586-87. Plaintiffs contend that the Court should follow *Hurtado* and conclude that Mexico would have no interest in limiting their available damages.

But *Hurtado* has not been read as broadly as Plaintiffs suggest. *See, e.g.*, *Hernandez*, 102 Cal. App. 3d at 802. The tort in *Hurtado* was an entirely local one, an automobile accident, in which all the relevant acts occurred in California;

---

[6] Another potential difference is that Mexico does not appear to allow expectancy damages but instead seeks to restore the status quo ante. S. Zamora, et al., Mexican Law 525 (Oxford University Press 2007). While Mexico law appears to allow only reliance damages, California law authorizes specified expectancy damages as well. *See* Cal. Civ. Code § 3343. Damages are a substantial issue in this case because Defendants claim that Plaintiffs did not suffer any reliance damage after buying the property in 2014 for $15 million (including VAT) and selling it in 2019 for $29 million (excluding VAT). Dkt. No. 209-2 at 86.

and the California Supreme Court was called upon to consider a narrow question about the applicability of the damage limitation under Mexico law. This more limited reading of *Hurtado* is explained in *Hernandez*—a subsequent decision cited approvingly by the Ninth Circuit in *Abogados*, 223 F.3d at 935. Like *Hurtado*, *Hernandez* was a lawsuit about an automobile accident involving a Mexican resident as the plaintiff and California residents as defendants. 102 Cal. App. 3d at 801-02. But unlike in *Hurtado*, the accident in *Hernandez* took place in Mexico, where the defendants, tourists, struck and injured the plaintiff. *Id.* Distinguishing *Hurtado*, the *Hernandez* court concluded: "In the case at bench, by contrast, the accident occurred in Mexico, and California has no legitimate interest in the possible deterrent effect of its unlimited recovery rule on conduct in Mexico." *Id.* at 800.

*Hernandez* recognized another important distinction when the place of the wrong occurs outside of California and the law of the foreign jurisdiction defines the applicable claim—namely, the governmental interests in the available remedies cannot be considered separate and apart from the applicable claim. *See id.* at 803-04. As the court persuasively explained:

> [W]here a jurisdiction, here Mexico, is interested both in the fact that the accident occurred within its borders *and* in the fact that the person seeking compensation is a resident of that jurisdiction, we do not believe the interest of the state in creating a cause of action or recognizing a right to recover damages in the first instance can be totally divorced from its concurrent interest in limiting the amount of damages recoverable. It may well be that no cause of action would have been recognized had the amount of damages recoverable not been limited. Here, for example, Mexico's recognition of a right to damages and its limitation of the amount recoverable in all likelihood reflect a balancing and accommodation of competing interests based on the societal values and economic and commercial circumstances prevailing in Mexico.

*Id.*[7] Applying this analysis, and recognizing Mexico's legitimate interest in promoting tourism, *Hernandez* held that Mexico's more limited damages rule

---

[7] Despite the persuasiveness of the point that a state's interest in creating a claim and defining the related remedies is practically inseverable, this Court analyzes the interest separately for two reasons. First, this is arguably the approach required by *Wa. Mut. Bank, FA*, 24 Cal. 4th at 920. *See* discussion *supra*. Second, the

applied—even though this decision served to limit a Mexican resident's recovery. *Id.* at 804.

The present case is more like *Hernandez* than *Hurtado*. Plaintiffs are Mexican citizens suing for alleged misrepresentations communicated to them in Mexico about Defendants' plans for their Mexican subsidiaries in connection with the sale of property located in Mexico. The sole California connection is that Defendants made those alleged fraudulent misrepresentations from their Los Angeles offices. Like in *Hernandez*, Mexico has a strong interest in promoting international commerce within its borders, and Mexico law makes no provision for punitive damages. Instead, Mexico authorizes a civil claim for non-contractual liability limited to the recovery of damages caused by the misconduct and leaves to its criminal justice system the imposition of punishment. Mexico has an interest in striking what it perceives to be an appropriate balance between competing economic and societal values when fashioning a remedial scheme, and that balance is disrupted when the cost of doing business within Mexico's borders falls more heavily on foreign companies.

In contrast to Mexico's strong interest in the regulation of national and international business within its borders, California has little interest in subjecting its residents to disparate treatment relative to their Mexican counterparts when doing business in that country. *See Paulo*, 792 F.2d at 896 (California has no interest in applying its laws for the benefit of foreign residents). And any interest California has in deterring wrongdoing by its citizens is not sufficient to elevate its own laws over those of another state when the effects are experienced elsewhere. *Id.* (finding California's interest in deterrence subordinate); *see also Stangvik v. Shiley Inc.*, 54 Cal. 3d 744, 759 (1991) (concluding that "the additional deterrence that would result if defendants were called to account for their allegedly wrongful conduct in a California court rather than in the courts of Scandinavia would be negligible"). Thus, Mexico law governs the scope of any allowable damages here.

---

outcome would be the same under a separate or combined approach in view of Mexico's overriding interests. Under a combined approach, however, the material differences between California and Mexico law are even more pronounced because they include both the contributory-negligence bar and damage limitations.

### D. Statute of Limitations

#### 1. The Choice of Law

The final issue to be decided is the applicable law governing the statute of limitations for the fraud claim in this case. The difference between California and Mexico law is substantial: California provides a three-year statute of limitations, while the CCT has a one-year period. *Compare* Cal. Code Civ. P. § 338 *with* CCT Art. 1510.

For this issue, there is no need to resort to the governmental interests test because the California Legislature has specifically supplied the answer to the statute-of-limitations question raised here. *See* Cal. Code Civ. P. § 361. Section 361 states:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued.

*Id.*

Under this so-called "borrowing statute," California courts "borrow" a foreign jurisdiction's statute of limitations if the action arose in a foreign jurisdiction and would be barred under the laws of that jurisdiction. *McCann*, 48 Cal. 4th at 79. In effect, "[t]he borrowing statute applies to prevent non-residents with expired claims from filing in California and using the more-favorable California statute of limitations to revive their claims." *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 797 (N.D. Cal. 2020). California enacted section 361 early in its history to avoid the "principal problem" of "questionable forum shopping" by a plaintiff whose claim is barred in the jurisdiction in which the claim arose. *McCann*, 48 Cal. 4th at 84.

On the facts of this case, the borrowing statute requires that the Court apply the one-year statute of limitations under applicable Mexico law. Upon addressing the governmental interests test, the Court concluded that the alleged fraud (i.e., the "wrong") was committed in Mexico, the place where the alleged misrepresentations were communicated to Plaintiffs. *See Zinn*, 148 Cal. App. 2d at

80, n.6. Any injury resulting from the alleged fraud also occurred in Mexico, sustained by Mexican residents conducting business in Mexico, involving commercial property located in Mexico. When the wrong and injury occur in Mexico to Mexican residents, the cause of action arises in Mexico for purposes of section 361. *See Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1184 (S.D. Cal. 2007) ("In California, a tort cause of action arises when the wrongful act is committed, even though damages resulting from the tort was not sustained at that time, and even though the plaintiff may not know that a tort has been committed.").[8] Because Mexico law has a shorter statute of limitations and Plaintiffs are Mexican residents, the one-year period for filing a claim under the CCT applies if that period has lapsed.

But even assuming that California's borrowing statute were inapplicable, the Mexican statute of limitations would still control under the governmental interests test. The laws are materially different, as Mexico has adopted a shorter limitations period. "[B]y establishing a statute of limitations, [Mexico] has expressed its interest in the timely adjudication of those claims." *Rodriguez v. Mahony*, 2012 WL 1057428, at *10 (C.D. Cal. Mar. 26, 2012). Mexico also has an interest in limiting liability for commercial activity within its borders so as to provide "fair treatment to, and an appropriate incentive for, business enterprises"—which extends "to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state." *McCann*, 48 Cal. 4th at 91.

California, on the other hand, has no substantial interest in applying its longer statute of limitations to protect foreign citizens whose claims would be time

---

[8] California law does not clearly state when a claim has "arisen" for purposes of section 361 (which is necessary to know in determining *where* the claim arose). *See ChinaCast Educ. Corp. v. Chen Zhou Guo*, 2016 WL 6645792, at *4, n.2 (C.D. Cal. June 3, 2016) (suggesting that there is "a split of authority concerning whether a tort action 'arises' where the injury occurs or where the wrong is committed"). This issue is further complicated by the fact that courts often refer interchangeably to two different words used in that statute—"arisen" and "accrued"—without discussing whether those words reflect different concepts. *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 734 (7th Cir. 2010) ("The terms 'arose' and 'accrued' often are conflated, because, other than in cases in which the discovery rule is invoked, usually the date on which the cause of action 'accrues' is also the date on which it 'arises.'"). The Court need not parse the many intricacies of this issue because both the alleged wrong and injury occurred in Mexico.

barred by foreign law, at the expense of California residents. See Cal. Code Civ. P. § 361 (barring foreign claims that have expired in the foreign state in which they arise); Mattel, Inc. v. MGA Ent., Inc., 2011 WL 13128407, at *6 (C.D. Cal. Apr. 6, 2011) ("California has no interest in relieving a non-citizen [from Mexico] from a more strict statute of limitations so that it can sustain a claim against two California citizens."). "Statutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost." Ashland Chem. Co. v. Provence, 129 Cal. App. 3d 790, 794 (Cal. Ct. App. 1982). To that end, "California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state." Deutsch v. Turner Corp., 324 F.3d 692, 717 (9th Cir. 2003).

In any event, even if California had an interest in applying its longer statute of limitations, Mexico's interest is stronger. As previously discussed, this case involves a business transaction on Mexican soil, implicating Mexico's significant interest in establishing the commercial rules and the legal consequences for violating them, including the limits of liability for Mexican and non-Mexican residents alike. On balance, Mexico law should apply because its interests would be more impaired if the Court were to do otherwise here. See Paulo, 792 F.2d at 895-96 (noting California's lack of interest in applying its laws to compensate nonresidents for out-of-state injuries).

### 2. Mexico's Statute of Limitations

The Court must next decide the meaning of Article 1510 of the CCT. While the parties agree that Article 1510 would apply under Mexico law, they provide dramatically different interpretations of what triggers the limitations period under that article. Article 1510 states in relevant part:

> The statute of limitation is one year for . . . civil liability arising from actions that do not constitute crimes. The statute of limitation starts from the day [on] which the actions were verified.

CCT, Art. 1510 (translated by Massas, Dkt. No. 164-7 ¶ 4 (March 3, 2021)).

According to Defendants, the period commences when the fraudulent act is committed—even if no resulting harm has yet occurred and even if the fraud has not yet been discovered. Dkt. No. 360-1 (Massas Decl.) ¶¶ 14-16 (June 25, 2021). Defendants' expert (Massas) bases this reading of the statute on the dictionary

definition of "verified," which can mean "performed."  Dkt. Nos. 364-1, 364-2.  Plaintiffs' expert (Lopez), on the other hand, contends that "Mexico law . . . requires the perpetrator of a fraud to make a curative disclosure before the statute of limitations begins to run."  Dkt. No. 359-1 (Lopez Decl.) ¶ 21 (June 25, 2021).  Lopez testified that this means that Defendants would have to admit that they committed fraud to start the statutory clock.

The Court does not find Lopez's interpretation to be a reasonable construction of Article 1510.  The statute itself does not support his reading:  the period "starts from the day [on] which the actions were verified."  There is nothing in the statute that requires the wrongdoer to acknowledge the wrongdoing to commence the limitations period; and Lopez testified that he was unaware of anything in Mexico's jurisprudence (i.e., case law) that would support his interpretation.  In addition to lacking legal support, Lopez's interpretation appeared to shift at the hearing, as he testified that the statute would start if Plaintiffs otherwise became aware of the fraud and the resulting harm.  This is at odds with his declaration, in which he stated that the "curative disclosure" was required and that the statutory period has not yet started.  *Id.* ¶¶ 20-21.  But Plaintiffs clearly are aware of the alleged facts of their fraud claims, including the elements of Mexico's version of those claims, because they have filed a lawsuit and fully engaged in discovery.  Yet Lopez stated in his declaration that "FINSA's claims in this case . . . would be timely even if brought today" because "OpenGate continues to deny the fraud."  *Id.*

The actual meaning of Article 1510 appears to be more in line with the reading offered by Massas.  The statute focuses on the illicit acts as the trigger point—i.e., the day when the illicit "acts are verified."  This differs from the federal statute, which establishes the day of the resulting damage as the start of the running of the statute.  *Compare* Mex. Fed. Civ. Code Art. 1934 (clock starts "the day the damage was caused"); *Banco de Mexico v. Orient Fisheries, Inc.*, 680 F. Supp. 2d 1132, 1145 (C.D. Cal. 2010) (the clock starts under Article 1934 "two [2] years from the date the damage occurred.").  The only question is whether the alleged victim of the illicit act must know about the illicit act before the limitations period commences in light of the statutory requirement that the act be "verified."  Massas says "no."  He claims that the one-year period starts as soon as the illicit act is committed.  In support, Massas not only provides the dictionary definition of "verified" as meaning "performed," he also offers similar language from a similar statute of limitations under federal law in Mexico, Article 1161.  A comparison of the two statutes is set forth in Spanish below:

>CCT, Art. 1510. Prescriben en un año. . . . (IV) La responsabilidad civil proveniente de actos que no constituyen delitos. La prescripcíon corre desde el día en que se verificaron los actos.

>Mex. Civ. Code, Art. 1161. Prescriben en dos años. . . . (V) La responsabilidad civil proveniente de actos ilícitos que no constituyen delitos. La prescripcíon corre desde el día en que se verificaron los actos.

The first sentence sets forth the limitations period: one year under Article 1510; and two years under Article 1161. The second sentence describes the applicability of the provision to illicit acts that do not constitute a crime, using identical language except for the use of the adjective "illicit" (i.e., "ilícitos") when describing the word "acts." The third and last sentence, which specifies the statutory trigger, is identical—including the use of the verb "verified" (i.e., "se verificaron"). That is, the statute starts to run the day when the illicit "acts are verified." In an unpublished decision, the Ninth Circuit interpreted this phrase to mean when "the alleged fraudulent acts are performed." *Brady v. Brown*, 50 F.3d 13, *2 (9th Cir. 1995) ("Article 1161(V) of the Civil Code of Mexico applies a two-year statute of limitations to claims of fraud, and the limitations period begins to run at the time the alleged fraudulent acts are performed."). This appears to be a correct understanding of the statutory language. According to a treatise on Mexico law, the statute of limitations under Article 1161(V) starts to run "from the time that *the act of misconduct took place*." S. Zamora, et al., Mexican Law 530 (Oxford University Press 2007) (emphasis added). [9]

In sum, the applicable statute of limitations is found in Article 1510 of the CCT. Article 1510(IV) is identical to Article 1161(V) in all material respects, other than the prescribed statutory period (one year versus two years). Both statutes use identical language to specify when the limitations period begins to run—namely, on the day that the illicit "acts are verified." A dictionary definition of "verified" is "performed." The Ninth Circuit has interpreted a similar statute to have that meaning; and that meaning is supported by a treatise on Mexico law.

---

[9] Plaintiffs also point out that the first definition of the verb "verify," when translated from Spanish to English by Google Translate, is to "[c]heck or examine the truth of something." Dkt. No. 364-2. But the second definition, "realizar," means to "perform," when so translated. The latter definition appears to be the correct one in the context of Article 1510 for reasons discussed in the text above.

Plaintiffs have provided no cogent interpretation to the contrary.  Instead, they offered the testimony of a Mexico lawyer who provided a confusing and inconsistent construction of Article 1510, which is not supported by the statutory language.[10]

# CONCLUSION

Under the governmental interests test, Mexico law controls the substantive law, the available remedies, and the statute of limitations.  The parties agree that the CCT is the operative body of Mexico law.  Thus, Plaintiffs may bring a claim for non-contractual liability under CCT Article 1397, provided it is timely under the applicable one-year statute of limitations.

Before empaneling a jury for a potentially complex trial, the Court finds good cause to modify the case management order to reopen the motion deadline for the limited purpose of addressing the question whether Article 1510 of the CCT bars Plaintiffs' claims.  The Court believes this is appropriate in light of its ruling that Mexico law applies under the governmental interests test so that it can determine whether there is a triable issue on the statute of limitations before commencing trial.  The parties are ordered to cooperate in preparing joint summary judgment briefing on this one issue in compliance with the Court's MSJ Order (6.15.21), with the following modifications to the schedule:

- The parties should meet and confer per Paragraph 1(e)(i) by no later than **July 23, 2021**.

- Defendants shall be the moving party and must provide their portion of the Joint Brief to Plaintiffs per Paragraph 1(e)(ii) by no later than **August 2, 2021**.

---

[10] To an American jurist, a statute of limitations that starts when the fraud is committed would seem harsh in a case of delayed discovery of the fraudulent act.  However, the legal system in Mexico differs markedly from that of the United States.  The United States has a well-developed body of tort law that allows for the vigorous protection of individual rights.  "By contrast, the Mexican legal system reflects a . . . society, in which the government agencies are expected to intervene when necessary to protect those who have been injured or disadvantaged."  Zamora, *supra*, at 521.  Fraud, for instance, may be prosecuted in a criminal court, allowing for potential victim restitution.  *Id*. at 525.  In fact, Plaintiffs in this case apparently explored the possibility of a criminal action in March 2015.  Dkt. No. 239-3 (questioning whether there were "grounds for a criminal lawsuit").

- Plaintiffs must deliver a signed copy of the integrated motion, including their opposition, to Defendants per Paragraph 1(e)(iii) by no later than **August 12, 2021**.

- Defendants must finalize, sign, and electronically file the Joint Brief and all Joint Appendices per Paragraph 1(e)(iv) by no later than **August 13, 2021**.

- If either party wishes to submit a supplemental memorandum per Paragraph 1(f), they must do so by no later than **August 20, 2021**.

- A hearing on the motion will be set on **September 3, 2021** at 8:30 a.m.

Plaintiffs suggested that if the Court were to conclude Mexico law applied to this case, they might require additional discovery. To the extent that Plaintiffs are requesting discovery, they may do so in the nature of a Rule 56(d) request at the end of the Joint Brief, limited to five additional pages for Plaintiffs addressing the request and five additional pages in response for Defendants. If Plaintiffs seek additional discovery, they should describe the specific discovery sought, its relevance, and why it was not previously sought.